IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:19-CV-00079-KDB-DCK

| | |
|---|---|
| **TECHNIBILT GROUP INSURANCE PLAN AND TECHNIBILT, LTD.,** <br><br> Plaintiffs, <br><br> v. <br><br> **BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA,** <br><br> Defendant. | **ORDER** |

Defendant Blue Cross and Blue Shield of North Carolina ("Blue Cross") is a third party health insurance administrator for the Plaintiff Technibilt Group Insurance Plan (the "Plan"), sponsored by Plaintiff Technibilt Ltd. ("Technibilt"). In this action, Plaintiffs assert claims against Blue Cross for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA") related to Blue Cross' alleged failure to timely pay medical expenses incurred by a dependent of a Plan participant (the "Large Claim"), which resulted in a substantial loss to the Plan of more than $800,000 when all the expenses could not be claimed under a reinsurance policy. Now before the Court are the Parties' cross Motions for Summary Judgment (Doc. Nos. 31, 42).

The Court has carefully considered these motions, all the Parties' timely filed briefs and exhibits and oral argument on the motions from the Parties' counsel on March 18, 2021. For the reasons discussed below (and in the Court's earlier Order denying Defendant's Motion to Dismiss (Doc. No. 13) (the "MTD Order")), the Court finds that there are numerous genuinely disputed material factual issues and neither Plaintiffs nor Defendant is entitled to judgment as a matter of

1

law.  Therefore, the Court will **DENY** both motions. Whether Defendant breached its fiduciary duties under ERISA must be decided in a bench trial in this matter unless the Parties reach an earlier resolution of their dispute.

## I. LEGAL STANDARD

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Smith v. Collins*, 964 F.3d 266, 274 (4th Cir. 2020). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).  "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).  "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

## II. FACTS AND PROCEDURAL HISTORY

The Court has previously summarized the general factual contentions of the Parties in the MTD Order, which need not be repeated here. *See* Doc. 13 at 3-5. And, suffice it to say that in their respective discussions of the additional facts purportedly revealed in discovery the Parties continue to disagree on the relevant "facts" and how those facts should be considered and applied

with respect to Plaintiff's claims. *See* Doc. No. 44 at 2-5; Doc. No. 32 at 2-8. To the extent necessary, the Court will more specifically reference the Parties' various factual disputes below.

### III. DISCUSSION

In general, the Parties do not dispute the well-established legal principles governing the alleged breaches of Defendants' fiduciary duty under ERISA with respect to the Plan, which the Court has previously described. *See* Doc. No. 13 at 8-10. Rather, they argue about the application of stridently disputed facts to those standards. Indeed, while ERISA is undoubtedly a "complex" statute, it is ultimately a "remedial statute" that "should be liberally construed in favor of protecting the participants in employee benefits plans." *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 278 (4th Cir. 2019) (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 123 (4th Cir. 1991)). So, notwithstanding the technical ERISA arguments presented by both sides, because it appears clear (or at a minimum is genuinely disputed) that Technibilt fully turned over administration of their ERISA health benefit plan to Blue Cross (letting it decide who to pay, how much to pay, when to pay, etc.) the Court must determine at trial whether Blue Cross performed its delegated role prudently or instead dropped the ball (or more accurately the bill) in not paying the Large Claim before year-end, thereby resolving disputed factual issues related to Blue Cross' fiduciary duties.

Overall, Plaintiffs must show that (1) Blue Cross was a fiduciary of the Plan (which Blue Cross admits that it was, although it seeks to limit the scope of its fiduciary status), (2) Blue Cross breached its fiduciary responsibilities under the Plan, and (3) the Plan was adversely affected by Blue Cross' breach. *See Sims v. BB&T Corp.*, 2018 WL 3128996, at *5 (M.D.N.C. June 26, 2018). With respect to the scope of its fiduciary duties, Blue Cross reprises its argument from its Motion to Dismiss that it did not have discretionary authority or control over the conduct that allegedly

3

led to Technibilt's loss because investigation and payment, as opposed to adjudication, of a claim are allegedly ministerial (not fiduciary) functions. The Court ruled on this argument in the MTD Order, *see* Doc. No. 13 at 8-10, and it fares no better under Rule 56.

As mentioned above, Blue Cross was delegated broad discretion over the administration of the Plan, including all aspects of processing and payment (other than determining who is properly a Member of the Plan). *See* Doc. No. 42-2 (the Parties' Administrative Services Agreement ("ASA") at §§ 7.1-7.3.) While Blue Cross asks the Court to distinguish among these delegated duties, finding some to be "fiduciary" and others to be "ministerial," as previously explained the concept of "ministerial" duties applies to those routine tasks in which a person is merely *applying standards set by others* and thus cannot be held to exercise any discretionary authority. Here, by contrast, Blue Cross specifically bargained to be allowed to "apply its standard practices, policies and procedures," *id*. at § 7.4, so it was in fact exercising its own discretion with respect to all the "services described in this agreement." Accordingly, the Court finds that the scope of Blue Cross' fiduciary (i.e., discretionary) duties extends to its full administration of the Plan, including decisions whether to pursue expedited claims handling and the timing of the payment of very large claims that could significantly impact the Plan.[1]

Moreover, at oral argument, Blue Cross' counsel conceded that the failure to "timely" pay claims could, in some circumstances, violate a fiduciary duty to the Plan.[2] Although Blue Cross

---

[1] Further, Blue Cross' reliance on section §7.2 being headed "General Ministerial Administration" and §7.3 headed "Fiduciary Status" is misplaced (even if the parties' descriptions in the ASA could override ERISA's definition of a fiduciary, which they cannot). In the ASA, which Blue Cross drafted, the parties expressly agreed that the headings were "for reference purposes only" and "shall not affect the meaning or interpretation of the agreement." *Id*. at § 18.10. Therefore, the Court cannot consider the headings in interpreting the ASA.

[2] The existence of a fiduciary duty as to the timing of claims prevents third party administrators of health insurance plans like Blue Cross from deciding and then simply indefinitely holding claims

argues that it timely paid the Large Claim based on when it received the Large Claim from the "Host Blue" insurer in Seattle (with whom the claim was required to be initially filed), its acknowledgement that a fiduciary duty can exist with respect to the timing of the payment of claims – that is, it is not *always* just a "ministerial" act – means that the real issue to be decided is whether or not Blue Cross breached that duty, considering all the relevant and unique circumstances of this case.

Indeed, whether or not Blue Cross breached its fiduciary obligations is the crux of the factual dispute among the Parties. On the one hand, Plaintiffs contend that the evidence shows that Blue Cross was aware of the Large Claim months before the end of 2018, that Technibilt repeatedly told Blue Cross that the Large Claim needed to be paid before year end and that Technibilt asked Blue Cross to do everything it could to get the Large Claim paid in 2018. *See* Doc. 42-4. Further, Plaintiff argues that it is undisputed that Blue Cross took no action even to encourage the "Host Blue" to expedite its review of the claim.

In turn, Blue Cross argues that it had no obligation to try to expedite the claim because it was permitted under the ASA to "apply its standard practices, policies and procedures," which required it only to pay claims following the receipt of fully reviewed claims from the "Host Blue." Specifically, Blue Cross contends that its "standard practice" was to pay out-of-state claims within 30 days of receiving the claim from the Host Blue, which would mean its payment of the Large Claim would be timely even though it was after year end. However, the ASA contains an exception

---

without making a payment to a medical provider. And, it is irrelevant for these purposes that the Plan participant already received the medical care at issue. Insured participants seek medical care based on the Plan's promises to pay for that care and, of course, if the Plan does not pay the medical provider then the participant is responsible for the costs. So, the implied promise of timely payment to the medical provider cannot be divorced from the Plan participant's benefits under the Plan.

5

to Blue Cross' ability to apply its "standard practices" if "contrary instructions, agreements or Group Health Plan provisions exist." Technibilt argues that it both gave Blue Cross "contrary instructions"[3] and, in any event, it was imprudent for Blue Cross to not take action to try to speed up the processing of the claim as soon as it understood the importance of paying the claim by the end of the year. Thus, there is plainly a genuine factual dispute concerning whether Blue Cross breached its fiduciary duty of prudence with respect to its conduct regarding the payment of the Large Claim.

Finally, Blue Cross challenges whether the Plan suffered any harm as a consequence of Blue Cross' failure to pay the Large Claim in 2018. Blue Cross offers two arguments on this issue. First, Blue Cross contends that the Plan and its participants did not suffer any alleged losses because it was Technibilt – rather than the Plan – that was not reimbursed by the stop loss insurance coverage for the payment of the Large Claim.[4] It would substantially elevate form over substance

---

[3] Blue Cross argues that these and other communications are not "instructions" because they are not formal communications from the designated company representative and are not sufficiently specific or demanding to be binding. However, the relevant ASA provision does not define "contrary instructions." Therefore, again, it appears that it is for the Court to resolve the factual dispute both as to whether "contrary instructions" were given that required Blue Cross to pay the Large Claim (or at least take further action to make it more likely that it would be paid) and whether, even if these communications did not constitute binding instructions on their own, if all things considered Blue Cross failed to act with the requisite fiduciary prudence.

[4] Both Technibilt and the Plan are Plaintiffs and all of the Parties are named parties in the ASA. So, if it is "only" Technibilt rather than the Plan that suffered a loss then at least Technibilt should be able to sue and recover if Blue Cross acted wrongfully. However, Blue Cross initially claimed that Technibilt cannot pursue a direct contract claim under the ASA because ERISA preempts any state law claim related to the ASA. So, Technibilt would be in a "Catch-22" situation in which it couldn't pursue *either* a contract claim or an ERISA claim, regardless of whether Blue Cross breached the ASA. At oral argument, Blue Cross abandoned this dubious position, now arguing that because the ASA is not a "Plan document" Technibilt could have pursued a contract action, but only in state court (and it is now too late to do so). The Court disagrees. While it need not reach the "Plan document" issue because even Blue Cross concedes that it was a "functional fiduciary" under ERISA pursuant to the ASA (whether or not it is a "Plan document"), Plaintiffs' putative

6

Case 5:19-cv-00079-KDB-DCK   Document 71   Filed 03/25/21   Page 6 of 11

to find that neither the Plan nor participants is harmed by the loss of insurance proceeds because the plan sponsor is the policyholder and the payments come to the policyholder. A stop-loss insurance policy by its very nature would never affect the particular Plan participants involved because to be covered a loss has to first be paid. However, the availability of reimbursement for the catastrophic medical expenses that might be incurred by one Plan participant might certainly affect the viability of the Plan going forward, which in turn affects all other Plan participants.

Further, Blue Cross agreed / required that Technibilt make contributions into its general claims account to fund benefit payments. So, according to Blue Cross' logic, the "Plan" never paid any benefits to any Plan participants or incurred any financial obligations that were not handled monetarily by Technibilt.[5] However, the money in and out of the "Plan" was clearly received and paid - with all Parties' consent - *on behalf of* the Plan. (In fact, Blue Cross agreed in section 14.1 of the ASA, Doc. No. 42-2 at § 14.1, that Blue Cross could sue "on behalf of the Group Health Plan" to recover overpayments (and earn a recovery fee) even though Technibilt, not the Plan, funded the overpayments being pursued and would in turn benefit by the recovery). Therefore, the

---

contract claims could be asserted in this action within the Court's supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367 and could be continued even if the Court were to rule in Blue Cross' favor on Plaintiffs' ERISA claim. *See Salim v. Dahlberg*, 170 F. Supp. 3d 897, 907 (E.D. Va. 2016) (holding based on Supreme Court precedent that trial courts enjoy wide latitude in determining whether to exercise supplemental jurisdiction and are permitted to deal with pendent claims in the manner that most sensibly accommodates a range of concerns and values. Indeed, even when the federal claims that provide the basis for original jurisdiction are dismissed early in the litigation, a court may, but is not required to, dismiss the pendent state claims. Moreover, the court's decision to exercise supplemental jurisdiction is "purely discretionary.").

[5] Indeed, based on its "strictly follow the money" argument, it is not clear how Blue Cross ever could have *any* fiduciary liability to the numerous companies for which it provides similar services with the same payment protocols (presumably nearly all of its clients). And, certainly, Blue Cross has not suggested that it has informed any other company for which it handles the administration of their ERISA health care plan that it has no fiduciary duties under ERISA because the money flows only through the sponsoring company rather than the ERISA Plan itself.

loss of insurance payments expressly intended to reimburse the Plan for payments to participants should be considered a "loss" to the Plan.[6]

Second, Blue Cross argues that even if it had contacted the Host Blue in Seattle to check the status of claims Technibilt still would have suffered the alleged loss because it is, according to the Host Blue, "likely" that the Host Blue would not have transmitted the Large Claim to BlueCross any sooner. This argument raises numerous factual rather than legal questions. Blue Cross has filed an affidavit from an employee of the "Host Blue," Doc. No. 36, which, in summary, states that her company processed the Large Claim quickly and efficiently and that even if Blue Cross had tried to expedite the claim it would "likely" have made no difference. However, the affidavit also says that "a claim will only be escalated on request" (which admittedly never happened here) and "escalating a claim is a 'rare occurrence' determined on a case by case basis including potential penalties at risk." *Id*. at ¶¶ 7-8.[7]

Thus, while the "Host Blue" employee speculates that it might not have mattered, it is admitted there was a process in place (which was neither requested nor used) to expedite consideration of claims based on circumstances and need. Had Blue Cross explained the full situation to the "Host Blue" that would, at least arguably, have strongly supported "escalation" of the Large Claim. Therefore, considering all reasonable inferences in favor of Technibilt (the non-

---

[6] Blue Cross' cited authority, *David v. Alphin*, 2008 WL 5244504 (W.D.N.C. Dec. 15, 2008), *aff'd*, 704 F.3d 327 (4th Cir. 2013), does not support their argument. In that case, this Court ruled that the plaintiffs lacked Article III standing because their pension plan benefits would not be affected by the Plan's actual investment experience and the impact of the challenged conduct on the solvency of the Plan was too speculative (in fact, the facts indisputably established that the Plan in that case was substantially overfunded). Thus, the issue of whether the Plan or Plan Sponsor might have suffered a loss (as the result of misfeasance by a third party fiduciary) was not before the Court.

[7] Notably, the affidavit does not say that if Blue Cross had requested that the claim be escalated the request would have been denied. (Nor does the affidavit say how much time is typically saved for "escalated" claims).

moving party on Blue Cross' motion) and reserving questions of credibility and bias of the "Host Blue" employee until trial, "causation" is genuinely disputed in this case.

In sum, Blue Cross is not entitled to summary judgment on any of Plaintiff's claims.

Turning now to Plaintiff's Motion for Summary Judgment, the Court reaches the same conclusion. Considering the evidence with all reasonable inferences decided in favor of Blue Cross on Plaintiffs' motion, Plaintiffs are also not entitled to summary judgment.

Predictably, Technibilt takes a different path in its motion, arguing that Blue Cross committed three specific breaches of fiduciary duty under the ASA, and also more generally under ERISA. First, it contends that Defendant's actions and inaction constitute a breach of fiduciary duty under the express terms of the ASA because Blue Cross violated ERISA's mandatory timing requirements in Section 503, 29 U.S.C. §, 1133 which (together with its related regulations) allegedly required that Blue Cross pay the Large Claim within 30 days of the Host Blue's receipt of the claim.[8] While Blue Cross' obligations under Section 503 may be relevant to the overall analysis of Blue Cross' fiduciary obligations discussed above, the Court need not decide this technical ERISA issue on this motion because Section 503 does not specifically relate to the *payment* of claims; rather, it governs when claims must be decided and those decisions communicated to participants. Therefore, even if Blue Cross failed to comply with Section 503, that failure, standing alone, cannot support summary judgment for the Plaintiff.

Plaintiffs' second argument is that even if Defendant did not expressly breach its fiduciary duty under ERISA's timing requirements, it nevertheless violated the relevant standard policies,

---

[8]In the ASA, the parties agreed that "[i]n processing claims, BCBSNC shall be responsible for making the decision to allow or deny all initial claims for benefits that are filed by Members and for notifying each Member of the decision regarding the claim, consistent with the terms of this Agreement and Section 503 of ERISA."

9

practices, and procedures for the timing of the payment of claims, both internally to Blue Cross and in the insurance industry, which Plaintiffs contends is an independent express fiduciary breach under the ASA. This argument turns primarily on the Court's resolution of a specific fact – did Blue Cross' duty to "pay" claims within 30 days from the date the claim is made run from the date Blue Cross received the claim from the "Host Blue" or from the date that the "Host Blue" received the claim from the health care providers in Seattle? The Parties do not dispute that typically a claim should be decided within 30 days of the day it is "received" but disagree strongly on when the date begins to run. Again, it is not clear from the relevant regulations that there is a hard deadline for *payment* of claims, even if the regulations require that a decision be made and/or notification of an adverse decision be provided within 30 days. Thus, for purposes of summary judgment there are at least disputed issues of fact regarding "when the clock starts" and the applicable industry "standards" (resolving inferences in favor of Blue Cross as the non-moving party) that require the Court to decline to award summary judgment to Plaintiffs on this issue.

Next, Plaintiffs argue that if Defendant did not breach its fiduciary duty either by failing to comply with ERISA or internal and industry standard policies, practices, and procedures, it nevertheless did so by failing to follow instructions given by Technibilt and agreements made with Technibilt to process and pay the Large Claim by the end of 2018. However, as discussed above, there are numerous disputed issues of fact related to this argument. Accordingly, Plaintiff is not entitled to summary judgment on this ground.

Finally, Plaintiffs contend that irrespective of the specific alleged fiduciary failures discussed above, Blue Cross' conduct is a breach of the fiduciary duties mandated by ERISA, including the duties of loyalty (29 U.S.C. § 1104(a)(1)(A)), prudence (29 U.S.C. § 1104(a)(1)(B)), and to act in accordance with the documents and instruments governing the Plan (29 U.S.C. §

1104(a)(1)(D)). As stated in the MTD Order, "ERISA fiduciaries owe participants duties of prudence and loyalty." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007). The duty of prudence requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence ... [of] a prudent man ...." 29 U.S.C. § 1104(a)(1)(B). The duty of loyalty requires that a fiduciary must do so "for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A); *see Tatum v. RJR Pension Investment Committee*, 761 F.3d 346, 356 (4th Cir. 2014). While, as noted above, whether Blue Cross' conduct amounts to a breach of any of its fiduciary duties may ultimately be the focal point of the Court's final decision on the merits, for all the reasons discussed above, whether or not Blue Cross satisfied its fiduciary duties raises numerous disputed issues of fact that must be resolved at trial rather than on summary judgment.

Therefore, as with Blue Cross, Plaintiffs are not entitled to summary judgment.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The Parties cross Motions for Summary Judgment (Doc. Nos. 31, 42) are **DENIED;** and

2. This case shall **proceed to trial on the merits on all of Plaintiffs' claims** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 25, 2021

Kenneth D. Bell
United States District Judge